Paul Schmidt, Jane W. Schmidt, and Lumbermens Mutual Casualty Company, a Corporation, Individually and as Use Benefitee of E. L. Harlin, Plaintiffs-Appellants, v. Archer Iron Works, Inc., a Corporation, A. T. Scannell, and W. F. Scannell, Defendants-Appellees.

Gen. No. 50,890.

First District.

September 11, 1968.

Rehearing denied October 18, 1968.

William P. Nolan, Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellants.

Vogel & Vogel, of Chicago (L. H. Vogel, R. C. Vogel, and R. A. Walkovets, of counsel), for appellee, Archer Iron Works, Inc.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Plaintiff, Paul Schmidt, was awarded $250,000 for injuries sustained when a part of a tubular tower then being used for pouring concrete fell upon him. His wife's suit for loss of consortium resulted in a $15,000 verdict and his Workmen's Compensation insurance carrier was awarded $35,871.58 on its subrogation claim. The trial court set aside the jury verdicts, vacated the several judgments and entered judgment notwithstanding the verdict for the defendant-Archer and conditionally denied defendant's motion for new trial. Plaintiffs appeal.

The tubular tower and equipment was used for pouring a concrete shore approach for a bridge across the Missouri River. It was about 104 feet in height and quadrangular in shape. The concrete was elevated in a bucket, dumped into a hopper and manually poured into a chute which channeled it by gravity flow to its proper place on the bridge approach. There was a swivel operating device consisting in part of what is termed a boom spout bridle and bridle seat assembly. The evidence is conclusive that there was an "eye" pin 1¼ inches in diameter and 8 inches in length, a part of this assembly, which broke at a factory weld and permitted the chute to disengage at its tower end and plunge downward on the plaintiff. There is no issue in this case as to what happened or how it happened or whether or not the pin was defective nor the extent of the injuries. The defendant denied that it made, sold or assembled the pin in question and the trial court directed the verdicts on the theory that the plaintiffs' evidence wholly failed to show that the defendant made, delivered or furnished the pin.

Archer had for many years been engaged in the manufacture of both wooden and tubular construction towers and accessories for such towers. The tower in question was manufactured by Archer in response to an order from Victor L. Phillips Company, not a party to this suit, and a dealer in construction machinery and supplies. It was shipped to Pacific Bridle Company, not a party to this suit, at North Jefferson, Missouri, and delivered in boxes on the banks of the Missouri River. Pacific had the tower and its accessories constructed on a man-made island near the bridge approach, used it for their purposes, dismantled it and returned it to the banks of the Missouri River, unboxed, and thereafter sold it to Harlin Construction Company, who was plaintiff's employer. The plaintiffs' testimony clearly establishes that the steelworkers who erected this equipment erected a tower completely functional for pouring of concrete. In so doing, they did not add any parts, purchase any parts, or repair or weld any parts. It is fair to say also that after the equipment was dismantled, it remained on the banks of the river for some considerable time and Harlin then reconstructed it without likewise adding any material or equipment and had a functional piece of equipment. Harlin did, however, add to the tower a type of platform upon which an employee could stand and manually operate the chute. As we view it, the change in construction is in no way material to the issues. There is no affirmative evidence that any part of this equipment was manufactured or purchased elsewhere than from Archer. The evidence on behalf of the defendant shows that a boom spout bridle seat was ordered, but a boom spout bridle is not mentioned. Neither the order, the invoice nor Archer's stop order specifically include a boom spout bridle and it is the defective pin in the boom spout bridle that is the item whose failure is responsible for the injuries sustained. The pin is an essential, single unit, and integral part of the

84

bridle. The bill of sale between Pacific and Harlin does not specifically include a boom spout bridle. There is therefore no documentary chain of title connecting Archer with the specific piece of equipment which caused the injury. The record is silent as to what items of equipment were specifically shipped to Pacific, whether it was delivered to Pacific on the banks of the river or to some other location or who, if anyone, had access to the equipment between the purchase by Pacific and the purchase by Harlin. The trial court, therefore, concluded that the record was totally devoid of any evidence by the plaintiffs tracing the source of the pin to Archer and that this was particularly true since there was an unequivocal denial by Archer that it was manufactured or supplied by them.

Archer's catalog and the testimony establishes that over the years Archer manufactured parts and accessories for multiple-purpose wooden and tubular towers. The use of the tower determines the accessories ordered and in each instance the assembling of the tower unit was by the contractor on the job and not by Archer. It is clear from the 1926 catalog that a boom spout bridle is necessary to convert ordinary spouting into a boom spout on the job. It is equally clear from the 1929 catalog and the testimony that "whenever spouts are to be hung off from the tubular tower, the first section is supported on the sliding frame under the tower hopper with a boom spout bridle. This bridle bolts to sliding frame under hopper in hole provided." This legend is directly opposite a photograph of the boom spout bridle seat. Both were a part of the equipment used on the job. In the hands of both Pacific and Harlin, they had this swivel-type equipment functional for channeling the concrete in various directions without the necessity of moving the tower. Pacific assembled and used it for just such purpose, dismantled it and then within a few short months sold it intact to Harlin. It is thus clear that

85

either the boom spout bridle was shipped by Archer to Pacific or Pacific got it elsewhere. If Pacific got it elsewhere, it is not likely that the plaintiffs would have produced such testimony or if producible would have considered that it had any suit against Archer under such facts. Defendant is correct in stating that they are not obliged to prove the plaintiffs' case. On the other hand, it is but common sense that if it was probable that Pacific did acquire this boom spout bridle elsewhere, Archer had an impregnable defense. It strains credulity to the breaking point to believe that such a defense was available and not used. With a tower completely functionable on a swivel basis the reasonable inferences are that the boom spout bridle came with the equipment.

Three different pins were offered in evidence and considered by the jury. The first was offered by the plaintiffs and was the pin which was taken from the tower after the accident to Capital Machine Shop in Missouri, repaired, replaced and used by Harlin until the job was completed. Defendant and his engineer denied that Archer ever made a pin like it. A second pin was produced by Archer and identified as the type of pin they always manufactured and it is clear that it is substantially different from the one offered by the plaintiffs. A third pin offered in evidence by the defendant was obtained from the Perry Farm where this tower was reassembled for the purpose of taking pictures used in this lawsuit. The testimony shows that the damaged pin had been removed, marked and a duplicate pin provided. Obviously this pin was not prepared by Archer. It is thus clear that neither of the two pins identified by the defendant and offered in evidence were the pins involved in the injury. We think the evidence clearly shows that the pin offered by the plaintiffs was the pin involved in the accident. Was it a part of the equipment furnished to Pacific?

An officer of Archer testified as to the function of a boom spout bridle that "it is my understanding that the one shown in the catalog that the function is to connect the chute to the boom spout bridle seat. I am referring to catalog 1926. It bears No. 18 in the catalog numbering system of this 1926 catalog" and again when called on behalf of the defendant, he was asked this question, "Just the one number, number 18, covered both the boom spout bridle and the related pin whether it be Defendant's Exhibit 6 or Defendant's Exhibit 22 or Plaintiff's Exhibit 32A, whatever pin would be used to fit into the boom spout bridle seat, that pin with the boom spout bridle which was attached to the chute was in your organization a single item?" Answer "Yes." It thus seems reasonably clear to us that a boom spout bridle and a boom spout bridle seat were essential in the functioning of this equipment, that the defendant company knew the basic purpose for which the tower and the accessories were to be used and that every reasonable inference is that it was supplied to Pacific, that the parallel plates into which the "eye" pin was placed were shown in the catalog as a part of both the bridle and the bridle seat. There was testimony to the effect that the red oxide paint used on the rest of the tower was the same color as that of the defective pin. It seems to us to be pure speculation from this record to assume that Pacific had a boom spout bridle of their own and ordered only all of the remainder of the equipment from Archer, or to assume that someone else supplied it when certainly such information was readily available, if a fact, from Pacific. It is true that the specific item was not ordered, it is true that the specific item was not mentioned in the shop order. It is true that Pacific did not pay the $38 price shown on the price list of Archer for the bridle and were not billed for it. Yet the evidence is reasonably conclusive that there was a bridle

and bridle seat in the functional equipment delivered and used by both Pacific and Harlin.

 Under such circumstances, it appears to us clearly and squarely that there was an issue of fact which the jury determined in favor of the plaintiffs. It is further shown by the evidence that a platform for raising material was furnished. The platform was not specifically ordered, but it was testified that the platform was a part of the equipment. Neither was the platform specifically ordered or billed. It has been recently held in Pedrick v. Peoria & Eastern Railroad Company, 37 Ill2d 494, 510, 229 NE2d 504, 513:

> ". . . In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

We do not believe that the evidence which we have reviewed considered most favorable to the plaintiffs so overwhelmingly favors the defendant that no contrary verdict based on the evidence could ever stand.

The defendant urges that in any event it is entitled to a new trial because of improper argument on behalf of the plaintiffs and because of the use of improper photographs. We here note that the trial court in its memorandum opinion stated "Thus, if the evidence had established the source of the pin, then there was sufficient evidence for the jury's consideration as to the manner in which the pin was manufactured and there being no substantial error on which to base a motion for new trial, it is denied." We do not deem it necessary to further extend this opinion by a discussion of these matters. It is apparent that the trial court did not feel that they affected the verdict. It is likewise apparent that had the trial court felt that a fair trial was not received, his alterna-

tive order would have been to grant a motion for new trial if the judgment n. o. v. was reversed on appeal.

Accordingly, the order of the trial court granting the several judgments n. o. v. are hereby reversed and the cause remanded to the trial court with directions to reinstate the judgments entered originally on the jury's verdict.

Reversed and remanded with directions.

TRAPP and CRAVEN, JJ., concur.